TAGGED OPINION



**ORDERED in the Southern District of Florida on December 22, 2015.**

*Laurel M. Isicoff, Judge*
**United States Bankruptcy Court**

_____

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA

In re:                                    Case No.: 14-24665-LMI

WILLIAM RIVERA,                           Chapter 13

    Debtor.
_____/

### ORDER OVERRULING OBJECTION TO CLAIM OF
### SMART COMPONENTS, LLC

This matter came before me for an evidentiary hearing on August 19, 2015, on an objection by the Debtor, William Rivera (the "Debtor"), to the proof of claim filed by Smart Components, LLC ("Smart Components") (ECF #56). I have considered all of the evidence, including the testimony of the witnesses. I have also considered the case law, statutes and regulations relevant to this dispute. For the reasons set forth below, the Debtor's objection to claim of Smart Components is overruled, except with respect to the calculation of interest.

A proof of claim is prima facie evidence of its validity so long as it complies with the requirements of Fed. R. Bankr. P. 3001(f). *See In re Santiago*, 404 B.R. 564, 570 (Bankr. S.D.

Fla. 2009). Smart Components filed its claim, 3-1, on September 29, 2014 in the amount of $79,992.38 (the "Claim"). Attached to the Claim are a variety of documents including Official Attachment 1 to the Official Proof of Claim form - a calculation and breakdown of amounts due, a copy of an equity credit line agreement dated March 20, 2001 (the "Credit Agreement"), a copy of the mortgage securing the Credit Agreement, also dated March 20, 2001 (the "Second Mortgage"), and a variety of assignment documents showing the progression of assignments of the Credit Agreement and Mortgage from the original lender – First Union National Bank which merged with Wells Fargo Bank, NA,[1] who then assigned the Credit Agreement to Dove Creek, LLC,[2] who then assigned it to American Loan Services, LLC[3] who then assigned it to ALS Group 01, LLC [4] who then assigned it to Smart Components,[5] who has held the Credit Agreement and Mortgage since May 29, 2014. Thus, the Claim meets the requirements of Rule 3001 and therefore is entitled to a presumption of validity.

Consequently, at the evidentiary hearing, Debtor had the initial burden to "go forward with evidence establishing the basis of that objection." *In re Foutainebleau Las Vegas Holdings, LLC,* 434 B.R. 716, 748 n.29 (S.D. Fla. 2010) (*citations omitted*). If the Debtor succeeded in overcoming the presumption of validity, then the ultimate burden of proving validity of the claim rests on Smart Components. *Id. See In re Santiago*, 404 B.R. at 570. In each instance the burden of proof is preponderance of the evidence. "[T]he term preponderance of the evidence' is a common law term of longstanding use. The burden of showing something by a preponderance of the evidence . . . simply requires the trier of fact to believe that the existence of a fact is more

---

[1]  First Union National Bank merged with Wachovia on September 1, 2001. In 2008 Wells Fargo acquired Wachovia. *See First Union is Now Wells Fargo,* WELLS FARGO, https://www.wellsfargo.com/about/corporate/firstunion (last visited Nov. 30, 2015).
[2] The assignment is dated March 1, 2012
[3] The assignment is dated March 22, 2012
[4] The assignment is dated April 27, 2013
[5] The assignment is dated May 29, 2014

probable than its nonexistence . . . ." *U.S. v. Trainor,* 376 F.3d 1325, 1331 (11th Cir. 2004) (internal citations and punctuation marks omitted).

The objection to claim asserted the Claim should be disallowed because the Claim was based on a "fraudulent charge that has been conducted on [the Debtor's] account by the bank employee at one point in time." Thus, the Debtor demanded, the claimant had to show the actual ledger and trail of the transaction. "Debtor would like the copy and ledger of the amount of money that was claimed to be loan [sic] by the bank along with a payment history and copy of the check back and front that shows debtor cashed this check." In the absence of such proof, the Debtor argues, the Claim should not be allowed.

At trial the Debtor testified that he obtained the line of credit reflected in the Credit Agreement in 2001, that he never took more than $8,000 from the line of credit, and that was in the first few months after he signed the Credit Agreement. The Debtor also testified that he first received a statement in 2004 showing the amount due as $49,000 rather than $8,000 and, since that time, he has been trying to get the mistake corrected. The Debtor further testified that he continued to make payments on the line of credit until 2008[6] when, in his estimation, he had paid the amount due in full. Finally, the Debtor testified, he sent a letter to First Union in 2004 about the mistake; however, the Debtor did not have a copy of the letter (he claimed he gave the copy to a lawyer and the lawyer didn't give the letter back). According to the Debtor, unfortunately all of the Debtor's records were destroyed in Hurricane Wilma in October of 2005. However, the first letter to Wells Fargo[7] that is in evidence is a letter from the Debtor dated May 28, 2010.[8]

---

[6] The evidence at trial proves the last payment was made in June of 2010 and the Debtor conceded that was the correct date.
[7] The letter is addressed to Wachovia.
[8] Exhibit 1

3

Mr. Alberto Artasanchez, principal of Smart Components, testified in support of the Claim. Mr. Artasanchez testified that he first became involved with the Credit Agreement in 2012, when Dove Creek LLC acquired the Credit Agreement and Mortgage from Wells Fargo. Mr. Artasanchez testified that when the loan was purchased from Wells Fargo, the Account Worksheet[9] indicated the last payment on the Credit Agreement was June 14, 2010. Mr. Artasanchez also testified that he subpoenaed the loan files from Wells Fargo and produced to the Debtor everything that was produced to him. However, although it appears Wells Fargo does have copies of statements dating back to 2004,[10] Mr. Artasanchez testified no statements were produced by Wells Fargo to him.

In the objection to claim the Debtor stated the amount due included a fraudulent charge. In a letter dated January 22, 2014 from the Debtor to "To Whom it May Concern", when requesting a hardship discharge, the Debtor stated that, after receiving the 2004 statement with the higher amount "I immediately contacted First Union and requested information as to how the funds had been withdrawn. They could not provide any documentation and when I requested account documentation the Social Security number and d/o/b did not match mine which leads me to believe there was fraud on my account."[11] However, at trial the Debtor never testified about any alleged fraud or fraudulent conduct. The Debtor also acknowledged that, at the time he allegedly learned of this apparent fraud, he never notified law enforcement.

The Debtor testified that he wrote many letters regarding the charge while "at the branch" but he did not provide copies of any letters other than the May 28, 2010 letter and the January

---

[9] Exhibit H

[10] Exhibit E, a letter from Wells Fargo to Debtor dated December 13, 2010, produced by the Debtor in the state court litigation, references as an enclosure account statements from March 17, 2004 through April 18, 2005 but the statements were not produced to Smart Components and the Debtor testified he never received the statements with the letter.

[11] Exhibit G.

4

22, 2014 letter. Moreover, although the Debtor testified that his records were destroyed in Hurricane Wilma, Hurricane Wilma took place in October of 2005, and the Debtor did not produce any documents, other than the letters just referenced, for the period after Hurricane Wilma, even though the Debtor continued to receive statements, and, according to him, continued to dispute the charges, at least through the time he stopped making payments in 2010.

Smart Components has argued, and the Debtor doesn't contest, that the Fair Credit Billing Act ("FCBA") and the Truth in Lending Act ("TILA") apply to the line of credit. Indeed, the line of credit includes, in surprisingly (for a form loan document) easy to understand language, the following, which disclosures are required by the FCBA regulations:

> **I Should Notify You In Case of Errors or Questions About My Statement**
> If I think my Statement is wrong, or if I need more information about a transaction on my Statement, I should write you on a separate sheet at the address listed on my Statement. I should write you as soon as possible. You must hear from me no later than 60 days after you sent me the first statement on which the error or problem appeared. I can telephone you, but doing so will not preserve my rights.[12]

The uncontroverted evidence shows that the Debtor knew about the alleged billing error in 2004. The evidence shows that the Debtor continued to pay First Union and then Wells Fargo until June 14, 2010. The evidence shows that on May 28, 2010, the Debtor asked Wells Fargo for an accounting on "how the funds were withdrawn from the line of credit"[13] but was then advised that the farthest back that Wells Fargo could research was seven years as "anything before that has been purged from the system."[14] The Debtor then went back to Wells Fargo in April of 2011, once again questioning the principal amount of the loan, but Wells Fargo was unable to help him.

---

[12] Exhibit A
[13] Exhibit 1
[14] Exhibit 2

While the Debtor testified that he did send a letter in 2004, he did not identify the lawyer to whom he allegedly gave the copy of the letter, nor did he explain when he gave the letter to the lawyer nor why he did not retrieve that copy, especially when any other documents the Debtor had were destroyed in Hurricane Wilma.

According to the Debtor's January 22, 2014 letter, whatever method the Debtor used to notify First Union in 2004, according to his January 22, 2014 letter, the Debtor did get a response. But there is no evidence that the Debtor did anything regarding the billing dispute after he sent the letter in 2004 (assuming he even sent that letter) until the May 28, 2010 letter, and, in fact, the Debtor did continue making payments on the loan until June 14, 2010. Although the Debtor said he sent lots of letters "from the branch" he did not provide any proof of any communications until the May 28, 2010 letter. Finally, by the time the Debtor sent the letter in May 28, 2010 Wells Fargo was no longer able to retrieve records that would have shown the advances on the line of credit during the time when the advances were allegedly made or not made.

The Debtor correctly argues that failure to comply with the provisions of the FCBA does not preclude the Debtor from contesting the amounts due. 15 U.S.C. §1962g(c). Nor, for that matter, would Smart Components, as successor to Wells Fargo, be prevented from collecting the amount due (other than some interest), even if a letter had been sent and Wells Fargo had failed to respond. 15 U.S.C. §1962f (describing disallowed unfair debt collection practices). In this case, the Debtor does not contest that Wells Fargo was charging based on a principal amount of $49,000 rather than $8,000, thus Smart Components' reliance on Wells Fargo's statement of account[15] for purposes of completing its proof of claim is not inappropriate. Nor did the Debtor testify that Wells Fargo ever readjusted the principal amount based on his alleged protests.

---

[15] Exhibit G

Indeed, the Debtor testified, it isn't that Wells Fargo didn't respond, rather, the Debtor did not like the responses that Wells Fargo provided.

Thus, the dispute is with the correctness of Wells Fargo's numbers, not Smart Components' reliance on the Wells Fargo numbers.  But, the Debtor has not cited to any case that requires that, in order to recover the debt, either Wells Fargo or Smart Components is legally obligated to produce the entire loan history.  In fact, the Debtor, in his closing, cited to Florida law that requires those records must be kept for only three years.  Consequently, Wells Fargo's seven year records' destruction policy exceeds that required by Florida law.  Smart Components provided a basis – the Wells Fargo account summary – for its Claim.  For purposes of filing the Claim, and, indeed, filing a complaint under Florida law, this is an adequate substantiation of the amount due.

I must weigh Mr. Rivera's testimony that he did not draw down in full under the letter of credit against a complete dearth of evidence to support the Debtor's claim that he advised First Union in 2004 and continued to protest the $49,000 balance.  There are no letters before 2010, there was no police report, and there are no statements or anything to substantiate any communications with Wells Fargo about the principal amount until that 2010 letter.  Thus, with one exception that I will address shortly, I have no choice but to find that the Debtor failed to meet his burden to rebut Smart Components' prima facie valid Claim.  Moreover, even if the Debtor had managed, by a preponderance of the evidence, to shift the burden back to Smart Components, I find that the documents Smart Components presented in support of its Claim met its ultimate burden of persuasion that the Claim is valid.

The one exception is the amount of the unpaid principal balance of $51,403.31 included on Exhibit D and from which all interest is calculated beginning with July 1, 2010.  According to

the information provided from Wells Fargo to Dove Creek LLC, as indicated on Exhibit H, the principal balance of the line of credit was $48,967.37. Based on Exhibit H, the $51,403.31 was the amount due with accrued interest as of April 20, 2011. I did confirm that the 10% interest rate is in accordance with the provisions of the Credit Agreement. Mr. Artasanchez's explanation of the calculation is not supported by the primary document on which he relies – Exhibit H – and so I will require Smart Components to recalculate interest from July 1, 2010 based on the corrected principal amount. The amended proof of claim must be filed within 30 days from the date of this Order.

A trier of fact is assisted in her deliberations by the allocation of burdens of proof. This is a hard case, but cases, easy or hard, require the trier of fact to weigh all the evidence, and in this case, the evidence requires the objection to claim must, for the most part, be overruled.

# # #

Copies furnished to:
Michael Marcer, Esq.
Gerard Kouri, Esq.

Attorney Kouri is directed to serve a copy of this Order upon all parties in interest and file a Certificate of Service with the Clerk of Court.